## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-03213-SKC

DAVE ARAGON,

       Plaintiff,

v.

LOWE'S HOME CENTERS, LLC,

       Defendant.

---

## PLAINTIFF'S MOTION FOR SANCTIONS FOR
## DEFENDANT'S SPOLIATION OF EVIDENCE

---

Plaintiff, Dave Aragon, by and through his attorneys, The Frickey Law Firm, respectfully submits the following Motion for Sanctions for Defendant's Spoliation of Evidence, and in support thereof states as follows:

### Fed. R. Civ. P. 37. Conferral

The parties substantially conferred via email, telephone, and Zoom videoconference. Defendant Lowe's opposes the relief requested herein.

### FACTUAL BACKGROUND

1.      Plaintiff alleges that he was walking through the Outdoor Garden Center at Lowe's Home Improvement Store #2419 located at 5095 S. Santa Fe Drive, Littleton, Colorado ("the Premises") on December 6, 2019 when he slipped and fell on ice that had not been remediated causing serious bodily injuries.

2.      Plaintiff brings claims against Defendant Lowe's pursuant to Colorado's Premises Liability Act, C.R.S. § 13-21-115.[1]

---

[1] Defendant Lowe's admitted in its Answer to Plaintiff's Second Amended Complaint that it is the landowner of the premises where Plaintiff fell.[1]

3.      Mr. Aragon spoke with Lowe's Assistant Store Manager Devin Ferguson, and David Arabie, the Lowe's Outdoor Garden Center customer sales associate, immediately after his fall on December 6, 2019.[2] He alerted them that he fell in the Outdoor Garden Center and that ice caused him to fall.[3]  In addition, he alerted Lowe's of the seriousness of his fall by detailing his injuries.[4]

4.      Three days after his fall, on December 9, 2019, Mr. Aragon went back to the Lowe's store and took photographs of the Outdoor Garden Center as the conditions on December 9, 2019 were substantially similar to the conditions on December 6, 2019.[5]

5.      Also on December 9, 2019, Mr. Aragon spoke with Assistant Store Manager Devin Ferguson at the Lowe's store, informing him of his injuries and documenting his injuries in a written email.[6]

6.      On December 9, 2019, Mr. Ferguson responded to Mr. Aragon's email and report of injury, stating:

> "After speaking to risk management, if you need immediate medical attention, you can go to the doctor, then risk management will need all receipts from any visits you go to (sic) that way they can reimburse you. Everything on there should be processed within 3 days."[7]

Three other people from Lowe's were copied on that email.

7.      Also on December 9, 2019, Devin Ferguson forwarded Mr. Aragon's statement to the Lowe's Claims Department telling them: "I will have to pull camera

---

[2] *See* **Exhibit 1,** Email from David Aragon to Devin Ferguson on December 9, 2019.
[3]  *Id.*. (This email strongly indicated to Lowe's that Mr. Aragon would most likely be pursuing litigation.)
[4]  **Exhibit 1,** Email from David Aragon to Devin Ferguson on December 9, 2019.
[5] **Exhibit 2,** David Aragon's Photos taken December 9, 2019; and *see* **Exhibit 1**, Email from David Aragon to Devin Ferguson on December 9, 2019.
[6] *Id.*
[7] **Exhibit 3,** Email from Devin Ferguson to David Aragon acknowledging "Claims Statement" dated December 9, 2019.

footage and send copies of the still frames."[8]

8.      On December 9, 2019, three days after Mr. Aragon's fall, Assistant Store Manager Devin Ferguson typed a statement entitled, *"Associate David Arabie Statement"* (Mr. Arabie is the associate working in the Outdoor Garden Center at the time of Mr. Aragon's fall) and sent that to Lowe's Claims Department.[9] Mr. Arabie testified that he prepared a handwritten statement and gave that piece of paper to Mr. Ferguson.[10] An electronic statement was disclosed by Lowe's in its First Supplemental 26(a)(1) Disclosure, but Lowe's admitted it did not preserve Mr. Arabie's handwritten statement.[11] Mr. Arabie's verbal account of the fall in his deposition more than three years is substantially different from Mr. Aragon's written account three days after the fall.[12]

9.      Defendant Lowe's has disclosed their policy, applicable to general liability claims like Mr. Aragon's, entitled "Document and Report a General Liability Claim," updated February 26, 2019, and available to Lowe's associates and mangers.[13] In the policy, procedures for the store manager to follow when documenting and reporting a general liability claim are detailed. Item No. 4 directs the store manager to promptly document the incident and to "obtain as much detail as possible about the circumstances of the incident."[14]  Among the items to be obtained are:

- Photographs of the scene or property damage
- Secure the store video surveillance tape of the involved part entering the store, navigating the store, exiting the store, as well as the incident itself, if captured.  This allows Risk and Legal to establish a timeline of events.

---

[8]  **Exhibit 1,** Email from David Aragon to Devin Ferguson on December 9, 2019.
[9] **Exhibit 4,** Devin Ferguson's email entitled, "Associate David Arabie's Statement" dated December 9, 2019.
[10] **Exhibit 5,** Arabie Dep. 29:13-25, February 3, 2023.
[11] *See* **Exhibit 4,** Devin Ferguson's email entitled, "Associate David Arabie's Statement" dated December 9, 2019.
[12] **Exhibit 5,** Arabie Dep. 40:17-22, February 3, 2023; *and see* **Exhibit 7,** .Lowe's Dep. 106:6-18.
[13] **Exhibit 6**, Lowe's policy "Document and Report a General Liability Claim" updated February 26,2019.
[14] *Id.* at 2.

- Identify witnesses including employees, customers, and vendors and <u>have them write down the events as they recall them while it is fresh in their minds.</u>
- The responding associate should complete the <u>General Liability Incident Form</u>. The customer wanting to report an incident or a non-employee witness should complete the <u>Customer/Witness Incident Form</u>, if possible.
- Email all evidence pertaining to this incident to Lowe's internal paperless document management system . . .[15]

**Lowe's testified that its policy spells out how personal injury matters should be documented and investigated and confirmed this policy should have been followed in the subject case.[16]** Lowe's testified that **none** of these policies were followed (except for one photograph).[17] **None** of this evidence exists (except for one photograph). This failure to preserve relevant evidence and failure to follow its own policies is confirmed by Defendant Lowe's 30(b)(6) corporate designee and counsel for Defendant Lowe's.[18]

10.     In its 30(b)(6) deposition, Defendant Lowe's agreed that Mr. Arabie's written statement had not been preserved as evidence in this case.

```
 6  Q We don't have Mr. Arabie's handwritten notes
 7  that he wrote down from when they were fresh in his
 8  mind, do we?
 9  A Not that I am aware of.
10  Q Okay. Those handwritten notes could very well
11  be different than what Mr. Ferguson wrote in his note to
12  the claims department, correct?
13  MS. OLSON: Object to form and foundation.
14  A I don't know.
15  Q (By Mr. Ballou) Right, we don't know. We
16  don't know because Lowe's didn't keep it, right?
17  MS. OLSON: Object to form.
18  A Correct.
19  Q (By Mr. Ballou) All right, let's look at the
20  last bullet point under Number 4. It says, "The
```

---

[15] **Exhibit 6**, Lowe's Document and Report a General Liability Claim at 2.
[16] **Exhibit 7**, Lowe's 30(b)(6) Dep. 94:17-95:1, February 22, 2023.
[17] **Exhibit 7,** Lowe's 30(b)(6) Dep. 111:17-25, February 22, 2023.
[18] **Exhibit 7,** Lowe's 30(b)(6) Dep. 94:17-95:1, 103:5-12; 103:23-105:4; 106:6-25; 107:9-12; 111:17-112:18; **Exhibit 8,** Email from Elizabeth Olson dated February 20, 2023, stating "No Video."  **(It is important to note** that Sales Associate David Arabie testified that as both a sales associate and *former store manager*, it is important for stores, such as Lowe's to have written policies, to train its employees regarding those policies and to follow written policies.  **Exhibit 5,** Arabie Dep. 124:11-125:25.)

> 21  responding associate should complete the General
> 22 Liability Incident Form."
> 23 Did I read that correctly?
> 24  A You did.[19]
> 9  Q Okay. In your review of this case, or in your
> 10 preparation, have you run across a General Liability
> 11 Incident Form regarding Mr. Aragon's fall, or his claim?
> 12 A I don't believe I have.[20]

11.     Defendant Lowe's agreed that it has specific polices outlining how and when to preserve essential evidence for cases "involving <u>possible bodily injury/illness</u> or property damage."[21]  It admitted that this policy was not followed in Mr. Aragon's case, consistent with its written goal of handling incidents in a manner that protects Lowe's interests.[22] Defendant Lowe's written policy regarding documenting and reporting personal injury incidents explicitly instructs its managers and associates: "Incidents must be handled in a manner that protects Lowe's interests."[23] Plaintiff's position is that a jury is entitled to know exactly what Defendant Lowe's did and did not do to preserve evidence regarding Mr. Aragon's fall. Lowe's agreed in its depositions that the policy exists to preserve important pieces of evidence.[24] The jury is further entitled to know that Defendant Lowe's consciously chose to protect its own interest by not preserving any evidence (except for one photograph).

12.     Lowe's acknowledged in its corporate deposition that key evidence in this case was not preserved and was contrary to Lowe's written policies regarding the same.

> 5  Q Okay. Was that video secured and preserved by
> 6  Lowe's?
> 7  A It was not.
> 8  Q Okay. This policy requires securing the video

---

[19] **Exhibit 7**, Lowe's Dep. 106:6-24; 111:17-112:18, February 22, 2023; *and see* **Exhibit 6**, Lowe's Policy, "Document and Report a General Liability Clam."
[20] **Exhibit 7**, Lowe's Dep. 107:9-12, February 22, 2023.
[21] **Exhibit 6**, Lowe's policy "Document and Report a General Liability Claim"
[22] **Exhibit 7**, Lowe's Dep. 106:6-24; 111:17-112:18, February 22, 2023
[23] **Exhibit 6,** Lowe's policy "Document and Report a General Liability Claim" at 1.
[24] **Exhibit 7,** Lowe's 30(b)(6) Dep. 112:1-8, February 22, 2023.

9  surveillance of Mr. Aragon navigating the store. Was
10  that video secured and preserved by Lowe's?
11  MS. OLSON: Object to foundation. Go ahead.
12  A It was not.[25]


23 Q And a similar line of question, Lowe's did not
24 secure and preserve tape of Mr. Aragon exiting the
25  store, correct?
1   A  Correct.
2   2  Q But it does appear, at least based on this
3  policy, the store would have the capability of video
4  recording all of that, right?
5  MS. OLSON: Object to form and foundation.
6  A Correct
7  Q (By Mr. Ballou) Okay. Does Lowe's agree with
8  me that Mr. Ferguson did not follow this bullet point of
9  the policy in Exhibit 9?
10  MS. OLSON: Object to form.
11 A Yes.
12  Q (By Mr. Ballou) I'm sorry, what was your
13  answer?
14  A  Correct.
15  Q And this -- this bullet point in Exhibit 9, it
16 supports the policy that it appears Mr. Ferguson was
17 referring to in the document we looked at earlier that
18 said he was going to secure the store video. Do you
19 remember that document we looked at?
20  A Yes.
21  MS. OLSON: Object to -- go ahead.
22 Q (By Mr. Ballou) But it appears that he did
23 not do that. He did not secure the video, correct?
24 MS. OLSON: Object to form.
25  A He did not.
1 Q (By Mr. Ballou) And that is contrary to the
2  policy we see in Exhibit 9, correct?
3  MS. OLSON: Object to form and foundation.
4  A Yes[26]

13.     On December 10, 2019, four days after Mr. Aragon's fall, a claims examiner

from Lowe's Corporation sent Mr. Aragon a letter advising Mr. Aragon that Lowe's is self-

---

[25] **Exhibit 7**, Lowe's 30(b)(6) Dep. 103:5-12, February 22, 2023.
[26] **Exhibit 7,** Lowe's 30(b)(6) Dep. 103:23 – 105:4, February 22, 2023.

insured, does not carry premises Medical Payment coverage and that his "claim" had been assigned to an adjuster for handling.[27]

14.    On January 6, 2020, one month after the date of injury, The Frickey Law Firm sent a letter to Lowe's advising them of its representation of Mr. Aragon for the December 6, 2019, incident.[28]

15.    Also on January 6, 2020, one month after the date of injury, The Frickey Law Firm sent the claims adjuster, Ms. Cheryl Godwin, of Lowe's Home Centers a preservation letter requiring the preservation of objects and information that may be relevant to the incident.[29]  On that same date, Cheryl Godwin, Lowe's Claims Examiner, sent a letter to The Frickey Law Firm acknowledging representation.[30]

16.    Litigation in this matter began on September 23, 2021.[31] and served Defendants Lowe's Home Centers, LLC, Lowe's HIW, Inc. and Lowe's Home Improvement Store #2419 on or about September 24, 2021.[32]   The case was subsequently removed to the U.S. District Court for the District of Colorado.

17.    On May 20, 2022, Plaintiff received Defendant Lowe's Home Centers, LLC's Responses to Plaintiff's First Set of Interrogatories, Requests for Production and Requests for Admissions.[33]

18.    In **Request for Production No. 4,** Plaintiff requested, "Any and all photographs, films, videotapes including, but not limited to store security surveillance

---

[27] *See* **Exhibit 9**, Correspondence from Lowe's regarding claims handling dated December 10, 2019.
[28] *See* **Exhibit 10**, Correspondence from The Frickey Law Firm to Lowe's dated January 6, 2020.
[29] *See* **Exhibit 11,** Correspondence from The Frickey Law Firm to Lowe's dated January 6, 2020.
[30] **Exhibit 12,** Correspondence from Lowe's Companies Risk Management dated January 6, 2020.
[31] **Exhibit 13,** Complaint and Jury Demand; **Exhibit 14,** Combined Affidavits of Service.
[32] **Exhibit 7,** Affidavits of Service on Defendants Lowe's**.**
[33] **Exhibit 15,** Defendant Lowe's Home Centers, LLC's Written Discovery Responses at 11.

videos, depicting any place, object or individual related to the **INCIDENT**, including efforts, if any, to remediate ice and snow before and after the **INCIDENT**."[34]

19.     Defendant Lowe's asserted objections and, subject to and without waiving the objections, produced "the only responsive photograph in its possession, identified and produced herewith as LHC 00251."[35]

20.     Plaintiff retained Mr. Brad Slabaugh, a property management expert, to inspect the location of the fall at the premises and to give an opinion as to the reasonableness or unreasonableness of Defendant Lowe's actions and omissions.

21.     In his report, Mr. Slabaugh observed, "Lowe's Home Improvement Centers employ a robust anti-theft surveillance system throughout their stores.  Cameras seem to be everywhere."[36]

22.     Mr. Slabaugh noted six surveillance cameras within 100 feet of the slip and fall location in the Outdoor Garden Center and provided pictures of the cameras in his report.[37]  Notably, two cameras are within 55 feet of the subject slip and fall location.[38]

23.     Defendant Lowe's testified that in April 2021 its surveillance system at the subject Lowe's store changed.[39]

24.     Defendant Lowe's further testified that, although there were approximately six cameras near the registers in the Garden Center, it believes there were only two cameras near the area that may have captured Mr. Aragon's fall on December 6, 2019: one camera was stationary and the other was a "pan tilt zoom camera, so that camera can be moved at will if somebody is watching the cameras.  So, say an asset protection

---

[34] **Exhibit 15** at 11.
[35] *Id.; and see* **Exhibit 16,** Lowe's photograph.
[36] **Exhibit 17,** Expert Report of Brad Slabaugh, November 22, 2022, at 11.
[37] **Exhibit 17,** Expert Report of Brad Slabaugh, November 22, 2022, at 12-13.
[38] **Exhibit 17,** Expert Report of Brad Slabaugh, November 22, 2022, at 13.
[39] **Exhibit 7,** Lowe's 30(b)(6) Dep. 16:12-19, February 22, 2023.

agent is on cameras and they're watching somebody suspicious, they can move that camera around." [40]   Additionally, Lowe's has not disclosed any asset protection person who may have witnessed or recorded Mr. Aragon's fall.

25.     Defendant Lowe's testified that despite at least one camera in the Outdoor Garden Center with the capability that not only could have been watched by an asset protection person, could have captured the fall, yet no camera captured footage of Mr. Aragon's fall.[41] For that reason alone, the surveillance footage for December 6, 2019 was not preserved.

26.     Defendant Lowe's admits that if it had preserved surveillance footage for December 6, 2019, as required by Plaintiff's preservation letter and its own policies such footage may have shown and, in fact, most likely would have shown relevant evidence like weather conditions, surface conditions, snow removal efforts if any, and ice melt application if any on the date of Mr. Aragon's injury.[42]

27.     Plaintiff obtained from the Littleton Police Department store video surveillance footage from three separate alleged criminal reports in 2018-2019 for which Lowe's store surveillance video was logged into evidence in order to support Lowe's theft claims. One video has clear footage of the outdoor garden center showing weather conditions, customer and Lowe's employee's activities, and all pertinent evidence that is conspicuously missing in the current action because video was not preserved.[43]

---

[40] **Exhibit 7,** Lowe's 30(b)(6) Dep. 18:3-19:22, 22:9-25, 23:11-22 & 24:3-24, February 22, 2023.
[41] **Exhibit 7,** Lowe's 30(b)(6) Dep. 24:3-24, February 22, 2023.
[42] *Id.*  at 86:19-87:23.
[43] **Exhibit 20,** Video – accessible via WeTransfer link (which will expire in seven days).
   https://we.tl/t-yzl64A3OFU
 (

28.     Despite all the foregoing, Defendant Lowe's maintains that the surveillance video of the Outdoor Garden Center on December 6, 2019 no longer exists.[44]

29.     In addition to the surveillance video and handwritten statement by Mr. Arabie, Defendant Lowe's failed to follow its own policy by failing to prepare a General Liability Incident Form and by failing to have Mr. Aragon prepare a Customer/Witness Incident Form

## **ARGUMENT**

**1.     A trial court can impose sanctions against a party for negligently destroying or failing to preserve evidence; bad faith or intent is not required.**

Colorado law allows a trial court to instruct a jury on spoliation of evidence when a party destroys or fails to maintain critical evidence in a case. A party that destroys or fails to maintain critical evidence should not be allowed to benefit from its actions. A court, through its inherent powers, can impose sanctions when a party conceals, tampers with, or destroys evidence. *Pfantz v. Kmart Corporation*, 85 P.3d 564, 568 (Colo. App. 2003). Sanctions are imposed to punish a party that has spoiled evidence *and* remediate the harm caused to the injured party by the evidence's absence. *Id.* at 567. The type of sanction imposed "should be commensurate with the seriousness of the disobedient party's conduct." *Id.* at 568.

Trial courts have broad discretion in imposing sanctions, and a trial court's order imposing sanctions on a party will be reversed only if it is "manifestly arbitrary, unreasonable, or unfair." *Aloi v. Union Pacific Railroad*, 129 P.3d 999, 1002 (Colo. 2006) (*citing People v. Welsh*, 80 P.3d 296, 304 (Colo. 2003)).

---

[44] **Exhibit 15**, Defendant Lowe's Home Centers, LLC's Written Discovery Responses at 11; *and see* **Exhibit 8** – Email from Elizabeth Olson dated February 20, 2023.

Before *Pfantz*, *Aloi*, and the Colorado Court of Appeals' decision in *Castillo v. Chief Alternative, LLC*, 140 P.3d 234 (Colo. App. 2006), the burden imposed upon a party seeking sanctions for spoliation of evidence was onerous and could be assessed only when there was (1) bad faith/intentional destruction of evidence by the destroyer of the evidence; or (2) it could be shown that the destroyed evidence would have been harmful to the party that destroyed it. *See Rodriguez v. Schutt*, 896 P.2d 881, 884 (Colo. App. 1994), *aff'd in part, rev'd in part,* 914 P.2d 921 (Colo. 1996).

*Pfantz*, *Aloi*, and *Castillo* clarified that this criterion is no longer required, and sanctions for spoliation of evidence are appropriate under a much lower burden of proof. For example, *Pfantz* held that sanctions are appropriate when the destructive act falls somewhere between bad faith and simple negligence. Even without a showing of bad faith, if a party has "engaged in culpable conduct which is more than mere inadvertence or simple negligence but is gross negligence [or recklessness]." *Id.* (*citing Newell v. Engel*, 899 P.2d 273 (Colo. App. 1994) (emphasis added). Further, even "if the spoiling party is *merely negligent,* an adverse inference nevertheless may be imposed to remediate harm when the inference is 'reasonably likely to have been contained in the destroyed evidence.'" *Pfantz*, 85 P.3d at 569 (emphasis added).

The Colorado Supreme Court approved the *Pfantz* decision in *Aloi* holding that Colorado subscribes to the "broader approach which does not require a showing of bad faith" because "it does not matter whether a party destroyed evidence in bad faith or whether a party destroyed evidence willfully because, regardless of the destroying party's mental state, the opposing party will suffer the same prejudice." *Aloi*, 129 P.3d at 1003. Moreover, with respect to having to prove that the evidence would have been harmful to the party that destroyed it, the *Aloi* court adopted a "minimum threshold" approach from

other jurisdictions that a party need only show "that the evidence would have been relevant to an issue at trial and otherwise would naturally have been introduced into evidence." *Id.* at 1004 (*citing Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)).

Finally, in *Castillo*, the Colorado Court of Appeals outlined reasonable behavior that would protect a party that had destroyed evidence from sanctions, or at least that would allow an appellate court to affirm a trial court's finding of no sanctions on appeal. 140 P.3d at 234. In *Castillo*, the plaintiff was injured at a night club by a falling three-foot mirrored column. The defendant made the decision to throw away the column, which the court found reasonable because the defendant: (1) called the plaintiff to inquire about her injuries shortly after the incident and was told she "wasn't hurt that bad and they weren't going to sue or anything;" (2) called its insurance company one year later to see if the insurer needed anything from the company; (3) retained the column for a full year and a half; and (4) only disposed of the column when the defendant closed the night club and presumably had nowhere to store the column.

As for the timing of the destruction or failure to secure evidence, courts generally have agreed that a party may be sanctioned even before a complaint has been filed if "the party knew or should have known that the destroyed evidence was relevant to pending, imminent, or reasonably foreseeable litigation." *Castillo*, 140 P.3d at 236. In adopting the broader standard for imposing sanctions for less egregious spoliation, the Colorado Supreme Court looked to other jurisdictions for guidance. *Aloi*, 129 P.3d at 1003. In one case, <u>knowledge of a plaintiff's injury was sufficient to make litigation foreseeable and trigger the defendant's duty to preserve equipment associated with the injury</u>. *Banks ex rel. Banks v. Sunrise Hosp.*, 102 P.3d 52, 58 (Nev. 2004) (holding that

12

an unexpected outcome from an operation put the hospital "on notice that an error may have occurred in the operating room, whether caused by the physicians or the equipment and, therefore, that litigation was foreseeable.")(emphasis added). The court further stated that "if the equipment had been functioning properly, it is reasonable under any circumstance to infer that [the hospital] would have wanted to preserve it in order to protect itself from a false claim of negligence." *Id*.

2.     **Defendant Lowe's destroyed or failed to preserve four pieces of critical evidence: (1) the Outdoor Garden Center surveillance video from December 6, 2019; (2) Mr. Arabie's handwritten statement from December 9, 2019; (3) the General Liability Incident Form related to Mr. Aragon's fall; and (4) the Customer/Witness Incident Form related to Mr. Aragon's fall.**

As set forth above, these critical pieces of evidence are highly significant and relevant and would have been introduced at trial if Defendant had not destroyed, lost, or failed to preserve them. The most critical of these pieces of evidence is the video surveillance, but additional critical information that may have been contained in Mr. Arabie's handwritten statement as opposed to its electronic counterpart is also important.

Had a General Liability Incident Form been created as required by Defendant Lowe's own policy, it more likely than not would have contained important information contemporaneous to Mr. Aragon's fall like weather conditions, surface conditions, and remediation efforts (if any). It is important to note that Defendant Lowe's has produced not one scintilla of written evidence in support of its contention that snow was shoveled and ice melt was applied on December 6, 2019 before Mr. Aragon's fall. Sales Associate David Arabie testified that he spent two hours shoveling the Garden Center on the morning of the incident.[45]  Plaintiff's weather expert opined in his report that there was no

---

[45] **Exhibit 5**, Arabie Dep. 18:2-5,

snow to shovel as freezing rain occurred on the morning of the incident.[46]  A large snowfall

occurred 10 days prior to Mr. Aragon's fall.[47]  Lowe's 30(b)(6) representative testified that

she "would be really surprised if there was rain.  Snow, very possible."[48] The destroyed

evidence more likely than not would shed light on this critical act or omission.

"To draw an adverse inference from the absence, loss or destruction of evidence,

it would have to appear that the evidence would have been relevant to an issue at trial

and otherwise would naturally have been introduced into evidence." *Aloi*, 129 P.3d at

1004 (*citing Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). Here,

the evidence that Defendant destroyed or failed to preserve is particularly relevant to the

<u>two most hotly disputed questions</u> in the case: (1) did Defendant Lowe's know or should

it have known about a dangerous condition on the premises and did Defendant Lowe's

use reasonable care to protect against the dangerous condition on the premises; and (2)

was Mr. Aragon's fall violent enough to sustain the injuries he is claiming. There can be

no doubt that the video, handwritten statement, general liability incident form, and

customer/witness incident form would have been introduced into evidence at trial and

would have shed light on these disputed issues.

3. **Defendant Lowe's knew or should have known to preserve this critical evidence based on its knowledge of a claim and injury to Plaintiff as well as Plaintiff's preservation letter.**

"The rule announced in *Aloi* - that a party may be sanctioned for destroying

evidence after notice that it is relevant to litigation - would seemingly apply regardless of

whether a complaint has been filed, so long as the party knew or should have known that

---

[46] **Exhibit 18**, Steve Clark's report October 24, 2022, at 2.
[47] **Exhibit 18**, Steve Clark's report October 24, 2022, at 1 & 3.
[48] **Exhibit 7,** Lowe's 30(b)(6) Dep. 76:1-7, February 22, 2023.

the destroyed evidence was relevant to pending, imminent, or reasonably foreseeable litigation." *Castillo v. Chief Alternative, LLC*, 140 P.3d 234, 236 (Colo. App. 2006).

Here, Defendant Lowe's knew of Plaintiff's injuries on December 6, 2019, the date of his fall, or at the latest December 9, 2019 when he returned to the store and provided additional information, including the extent of his injuries. This is clear from the disclosed correspondence dated December 9, 2019, including specific reference to video preservation. In addition, correspondence from December 9, 2019 shows a Lowe's claims examiner advising Mr. Aragon that Lowe's is self-insured, does not carry premises Medical Payment coverage and that his "claim" had been assigned to an adjuster for handling. Defendant Lowe's received Plaintiff's preservation letter on January 6, 2020, one month after Mr. Aragon's fall.

There can be no doubt that Defendant Lowe's knew or should have known that the destroyed evidence was relevant to pending, imminent, or reasonably foreseeable litigation.

**4.      Plaintiff requests that as a sanction for Defendant's conduct that the Court provide the jury with an adverse inference instruction at trial.**

"The ability to provide the jury with an adverse inference instruction as a sanction for spoliation of evidence derives from the trial court's inherent powers." *Aloi*, 129 P.3d at 1002. "Colorado courts have recognized adverse inference instructions serve both a punitive and a remedial purpose. The punitive function serves to deter parties from destroying evidence in order to prevent its introduction at trial. The remedial function serves to restore the putative prejudiced party to the position it would have held had there been no spoliation." *Id.*

The *Aloi* Court further found: "This approach accords with the rationales behind the adverse inference instruction. It serves the remedial function because it minimizes the

prejudice suffered by the non-destroying party. This standard also serves the punitive function because it deters destruction by placing the risk that destroyed evidence may not have been detrimental on the party responsible for the destruction." *Id*. at 1004.

**In *Aloi*, the trial court instructed the jury that they may "infer, by reason of the Defendant's failure to produce these documents, that the evidence contained in such documents was unfavorable to the Defendant." *Id*. at 1001.**

Plaintiff requests that this Court instruct the jury in a similar manner regarding Defendant Lowe's destruction of or failure to preserve critical evidence in this case.

WHEREFORE, Plaintiff respectfully requests that the Court enter an order sanctioning Defendant Lowe's for destroying or failing to preserve critical evidence as set forth herein and providing the jury with an adverse inference instruction at trial, the language of which will be finalized at a later date.

Respectfully submitted this 10th day of March 2023.

THE FRICKEY LAW FIRM, P.C.

/s/ Eric B. Ballou
Eric B. Ballou, 40163
940 Wadsworth Blvd., Suite 400
Lakewood, CO  80214
Telephone:    (303) 237-7373
Fax Number: (303) 233-7313
E-mail:        eballou@frickey.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day March 2023 a true copy of the foregoing **PLAINTIFF'S MOTION FOR SANCTIONS FOR DEFENDANT'S SPOLIATION OF EVIDENCE** was served by email to the following:

Christopher D. Bryan
Elizabeth K. Olson
Hall & Evans, LLC
Email: bryanc@hallevans.com
olson@hallevans.com

/s/ Alecia Farkas
Alecia Farkas, Paralegal